UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ULYSSES BRYANT, JR.                                              CIVIL ACTION

VERSUS                                                                    NO. 06-5478

WALTER REED - DISTRICT                                    SECTION: "F"(1)
ATTORNEY, ET AL.

**PARTIAL REPORT AND RECOMMENDATION**

Plaintiff, Ulysses Bryant, Jr., a state prisoner, filed this *pro se* and *in forma pauperis* complaint against District Attorney Walter Reed, Richard Stalder, the State of Louisiana, and the Louisiana Department of Public Safety and Corrections. In this lawsuit, plaintiff claims that he has been denied admission to a specialized rehabilitation program and, therefore, his plea agreement has been breached.

A Spears hearing was held on October 3, 2006, to allow plaintiff a meaningful opportunity to advise the Court of the nature and factual basis of his claims. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).[1] At that hearing, plaintiff was sworn and his testimony was recorded. Based

---

[1] "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

on his complaint and <u>Spears</u> hearing testimony, the Court finds that plaintiff is making the following allegations in support of his claims.

On January 26, 2006, plaintiff pled guilty to state criminal charges in exchange for a seven-year sentence with the understanding that he would be placed in the "Intensive Incarceration Program" provided in La.Rev.Stat.Ann. § 15:574.4(A)(2)(c)(ii). However, because of the program's exercise component, participants must pass a physical examination to be admitted. When plaintiff went for his physical examination, the doctor told plaintiff that he was ineligible because he has a torn ligament in his left knee. Although he was found to be ineligible for the program based on a physical disability as provided in § 15:574.4(A)(2)(g)(i), he complains that formal written notice of his ineligibility was never provided. Because he was not allowed to participate in the program, plaintiff subsequently filed a motion for reconsideration of his sentence in his state criminal proceedings. That motion was denied. Plaintiff feels that he is being illegally discriminated against based on his disability and that his plea bargain has been breached because he has been denied participation in the program.

This Court is statutorily mandated to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

The Court has broad discretion in determining the frivolous nature of the complaint. Cay v. Estelle, 789 F.2d 318, 325 (5th Cir. 1986), modified on other grounds, Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993). In making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). Thus, a complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994); Booker, 2 F.3d at 115 & n.6. Broadly reading plaintiff's complaint[2] and fully considering his Spears hearing testimony, the Court finds that many of his claims should be dismissed as frivolous, for failing to state a claim on which

---

[2] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

### Breach of Plea Agreement

To the extent that plaintiff is seeking to bring a claim for monetary damages regarding the alleged breach of his plea agreement, that claim is clearly barred in this proceeding. Because a finding that the plea agreement was breached would render his conviction invalid,[3] a claim for monetary damages for such a breach is currently barred by Heck v. Humphrey, 512 U.S. 477 (1994).[4] See Bonner v. Castloo, 193 Fed. App'x 325 (5th Cir. 2006).

To the extent that plaintiff is seeking any other form of relief regarding the alleged breach of his plea agreement, the Court similarly finds that the claim simply is not properly asserted in this

---

[3] "[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand." Mabry v. Johnson, 467 U.S. 504, 509 (1984).

[4] In Heck, the United States Supreme Court stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck, 512 U.S. at 486-87 (emphasis in original) (footnote omitted).

action. The proper method for a prisoner to assert such a challenge is to file a federal *habeas corpus* petition after exhausting his state court remedies.[5]

However, this Court can consider the separate and distinct claim of whether plaintiff was improperly denied admission to the Intensive Incarceration Program without running afoul of either Heck or the exclusivity of a *habeas* remedy. Accordingly, the Court will now turn its attention that claim.

Denial of Participation in the Intensive Incarceration Program

With respect to his allegation that he was wrongly denied participation in the Intensive Incarceration Program due to his disability, plaintiff asserts claims under 42 U.S.C. § 1983, the Americans with Disabilities Act, and state law. The Court will consider each of those bases for liability.

(1) Section 1983 Claims

Plaintiff filed his complaint on a form to be used by prisoners bringing claims under 42 U.S.C. § 1983. To the extent that plaintiff is in fact asserting claims under that provision, the claims should be dismissed for the following reasons.

Plaintiff has named the State of Louisiana as a defendant. Section 1983 claims against the State are barred by the Eleventh Amendment. The United States Fifth Circuit Court of Appeals has held:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts. ... By statute, Louisiana has refused any such

---

[5] "The law is clear that an unkept plea bargain is a valid basis for the grant of a writ of habeas corpus ...." Hayes v. Maggio, 699 F.2d 198, 203 (5th Cir. 1983) (footnote omitted).

> waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court.  See La.Rev.Stat.Ann. § 13:5106(A).
>     Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power.  We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280-81 (5th Cir. 2002) (quotation marks and citations omitted).  Because sovereign immunity deprives the Court of jurisdiction, claims barred by sovereign immunity should be dismissed without prejudice.  Warnock v. Pecos County, Texas, 88 F.3d 341, 343 (5th Cir. 1996).

Plaintiff has also named the Louisiana Department of Public Safety and Corrections as a defendant.  Because that department is a state agency, the claims against that defendant are likewise barred by the Eleventh Amendment.  Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312 (5th Cir. 1999).

Plaintiff has also named Richard Stalder, the Secretary of the Louisiana Department of Public Safety and Corrections, as a defendant.  A suit against a state official or employee in his official capacity is actually a suit against the state itself.  Hafer v. Melo, 502 U.S. 21, 25 (1991).  Therefore, to the extent that plaintiff is asserting a claim against Stalder in his official capacity, that claim is similarly barred by the Eleventh Amendment.  Alexander v. Ward, No. 94-41009, 1995 WL 71022 (5th Cir. Jan. 24, 1995); Francis v. Kaylo, Civ. Action No. 03-0439-A, 2006 WL 1581090, at *1 (W.D. La. June 5, 2006).

To the extent that Stalder has been named as a defendant in his individual capacity, that claim is also subject to dismissal.  Although that claim arguably is not barred by the Eleventh

Amendment,[6] plaintiff has failed to state a cognizable individual-capacity claim against Stalder. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). "Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). In this case, plaintiff has made no allegations whatsoever, either in the complaint or at the Spears hearing, of the personal involvement of Stalder.

Lastly, plaintiff has named District Attorney Walter Reed as a defendant. For the following reasons, plaintiff's claims against Reed also fail.

To the extent that plaintiff is seeking monetary damages against Reed, he is protected from any such claim by his absolute prosecutorial immunity. "Prosecutorial immunity applies to the prosecutor's actions in initiating the prosecution and in carrying the case through the judicial process." Boyd v. Biggers, 31 F.3d 279, 285 (5th Cir. 1994). A prosecutor's absolute immunity also extends to "actions apart from the courtroom." Buckley v. Fitzsimmons, 509 U.S. 259, 272 (1993) (quotation marks omitted). Further, "[a]bsolute immunity shelters prosecutors even when they act maliciously, wantonly or negligently." Rykers v. Alford, 832 F.2d 895, 897 (5th Cir. 1987) (quotation marks omitted). Such immunity protects a prosecutor against claims that allege he broke

---

[6] See New Orleans Towing Association, Inc. v. Foster, No. 99-30995, 2001 WL 185033, at *3-5 (5th Cir. Feb. 6, 2001).

7

a plea agreement. Rodriguez v. State of Louisiana, Civ. Action Nos. 88-0244 and 88-1323, 1988 WL 76237, at *3 (E.D. La. July 19, 1988).

Moreover, in any event, plaintiff has stated no cognizable claim against Reed regardless of the form of relief being sought. The only allegation against Reed is that, after being placed on notice that plaintiff was not allowed to participate in the Intensive Incarceration Program, Reed took no action to ensure that the alleged terms of the plea bargain were enforced by the court or that suitable alternative arrangements were made.[7] However, plaintiff has pointed to no authority establishing that Reed had an enforceable legal obligation to take such actions. Moreover, plaintiff had already been convicted and sentenced by the state district court. Therefore, any relief from that conviction or sentence would come from the trial court, not the district attorney. Plaintiff himself noted at the Spears hearing that he had already filed in the state district court a motion for relief based on the fact that the terms of his plea agreement were being violated, and the judge denied relief. If plaintiff believed the judge erred in denying relief, his recourse was to seek appellate review of that ruling[8] – not to file a federal lawsuit against Reed, who had no further role or obligation in this matter.

For all of the foregoing reasons, the undersigned recommends that all of plaintiff's § 1983 claims be dismissed.

---

[7] Rec. Doc. 1, p. 5, ¶ 14.

[8] Plaintiff has apparently availed himself of that option. See Rec. Doc. 1, p. 5, ¶¶ 9 and 10.

(2) Americans with Disabilities Act

Plaintiff also alleges that his exclusion from the Intensive Incarceration Program violates his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* Regarding such claims, the United States Supreme Court has held:

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reason modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by a public entity." The Act defines "'public entity'" to include "any State or local government" and "any department, agency, ... or other instrumentality of a State." We have previously held that this term includes state prisons. Title II authorizes suits by private citizens for monetary damages against public entities that violate § 12132.
> 
> In enacting the ADA, Congress "invoke[d] the sweep of congressional authority, including the power to enforce the fourteenth amendment ...." Moreover, the Act provides that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter." We have accepted this latter statement as an unequivocal expression of Congress's intent to abrogate state sovereign immunity.

United States v. Georgia, 126 S.Ct. 877, 878-79 (2006) (citations omitted). In that case, the Supreme Court went on to hold that "insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." Id. at 882.[9] However, the Supreme Court held open the

---

[9] Similarly, with respect to claims for *prospective* relief, the United States Fifth Circuit Court of Appeals has held that "state officers, sued in their official capacities ..., are proper defendants under Title II of the Americans with Disabilities Act and are not immune under the Eleventh Amendment." McCarthy *ex rel.* Travis v. Hawkins, 381 F.3d 407, 410 (5th Cir. 2004).

question of whether Congress' purported abrogation of sovereign immunity was valid with respect to conduct that does not violate the Fourteenth Amendment. Id.[10] The Supreme Court, therefore, held that courts are to determine the following "on a claim-by-claim basis":

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such conduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

Id.

In light the Supreme Court's ruling, too many issues remain unresolved at this early state of the proceeding for this Court to determine whether all of plaintiff's ADA claims are frivolous. For example, it must be determined whether Title II is even implicated, by considering whether plaintiff is in fact a "qualified individual with a disability" for the purposes of the ADA, whether he "meets the essential eligibility requirements" for participation in the Intensive Incarceration Program, and whether he was in fact denied participation in the program based on his disability. If it is determined that there is an otherwise colorable Title II claim, the Court must then determine whether the State's Eleventh Amendment immunity has been validly abrogated with respect to claims such as the one plaintiff asserts, in that his claim would not seem to implicate any constitutional right. However, those and other relevant issues are more appropriately considered after further development of plaintiff's claims and the underlying facts rather than at this screening stage of the proceedings.

---

[10] That question remains relevant because "Title II prohibits a somewhat broader swath of conduct than the Constitution itself forbids." 126 S.Ct. at 883 fn.* (Stevens, J., concurring) (internal quotation marks omitted).

10

Accordingly, while the undersigned expresses no opinion as to the ultimate merit of plaintiff's ADA claims, it is recommended that, at least at this point, he be allowed to proceed on the claim for damages against the State of Louisiana and the claim for prospective relief against Richard Stalder in his official capacity.

As to the remaining ADA claims, it is recommended that those claims be dismissed. In that plaintiff has named the State of Louisiana as a defendant, the ADA claim against the Louisiana Department of Public Safety and Corrections, which is in essence also simply a claim against the State itself, is redundant. As to the ADA claim against Richard Stalder in his *individual* capacity, such a claim is not cognizable. Joseph v. Port of New Orleans, Civil Action No. 99-1622, 2002 WL 342424, at *10 (E.D. La. Mar. 4, 2002) ("The majority of courts that have addressed the issue have held that the ADA does not permit claims against persons in their individual capacities."), aff'd, No. 02-30297, 2002 WL 31933280 (5th Cir. Dec. 27, 2002); see also Gonzales v. City of Corpus Christi, No. C.A. C-05-280, 2006 WL 1517507, at *5 (S.D. Tex. May 31, 2006); Georgetown v. Tran, Civil Action No. 01-1584, 2002 WL 818079, at *3 (E.D. La. Apr. 25, 2002). As to any ADA claim against District Attorney Walter Reed, that claim would be frivolous in that he obviously has no control over the Intensive Incarceration Program, which was established and is administered by the Louisiana Department of Public Safety and Corrections. See La.Rev.Stat.Ann. § 15:574.4(A)(2)(a).

### (3) State Law Claims

In his complaint, plaintiff also asserts state law claims against the named defendants. However, as previously noted, Louisiana has refused to waive its Eleventh Amendment sovereign immunity with respect to suits in federal court. La.Rev.Stat.Ann. § 13:5106(A). Therefore,

11

plaintiff's state law claims against the State of Louisiana, the Louisiana Department of Public Safety and Corrections, and Richard Stalder in his official capacity, all of which are in reality claims against the State itself, are barred in this federal forum by sovereign immunity. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 120-21 (1984); Roberson v. McShan, No. 05-20055, 2005 WL 2673516, at *1 (5th Cir. Oct. 20, 2005).[11]

The only state law claim against those defendants which arguably would not be barred by the Eleventh Amendment would be a claim against Stalder in his individual capacity.[12] However, even if that claim is not barred by the Eleventh Amendment, it still fails because, as previously noted, plaintiff has made no allegations against Stalder personally.

Similarly, as previously noted, plaintiff's allegations against Walter Reed are insufficient to state a claim against him. As discussed, plaintiff has identified no authority for his contention that Reed had an enforceable legal obligation to ensure that the alleged terms of the plea bargain were enforced by the court or that suitable alternative arrangements were made.

For all of the foregoing reasons, the undersigned recommends that all of plaintiff's state law claims be dismissed.

---

[11] The supplemental jurisdiction statute, 28 U.S.C. § 1367, does not abrogate Eleventh Amendment immunity. Raygor v. Regents of the University of Minnesota, 527 U.S. 666, 675-76 (1999); Roberson, 2005 WL 2673516, at *1.

[12] See New Orleans Towing Association, Inc. v. Foster, No. 99-30995, 2001 WL 185033, at *3-5 (5th Cir. Feb. 6, 2001).

12

<u>Summary</u>

In light of the foregoing, the undersigned recommends that, at least at this point, plaintiff be allowed to proceed on the ADA claim for damages against the State of Louisiana and the ADA claim for prospective relief against Richard Stalder in his official capacity. However, for the reasons previously set forth, it is recommended that all of plaintiff's other claims be dismissed.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's claim that his plea agreement has been breached be **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that plaintiff's § 1983 claims against the State of Louisiana, the Louisiana Department of Public Safety and Corrections, and Richard Stalder be **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that plaintiff's § 1983 claims against Walter Reed be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that plaintiff's ADA claims against the Louisiana Department of Public Safety and Corrections, Richard Stalder in his individual capacity, and Walter Reed be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that plaintiff's state law claims against the State of Louisiana, the Louisiana Department of Public Safety and Corrections, and Richard Stalder be **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that plaintiff's state law claims against Walter Reed be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-second day of January, 2007.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**